[Civ. No. 1579. Fourth Appellate District.—March 19, 1936.]

CORONA FOOTHILL LEMON COMPANY et al., Respondents, v. CHARLES E. LILLIBRIDGE et al., Appellants.

W. G. Irving, Rutan & Mize, Head, Wellington & Jacobs and Barker & Keithly for Appellants.

Guy Richards Crump and Walter S. Clayson for Respondents.

MARKS, J.—This is an appeal from an order taxing costs. It involves the reporter's per diem fees, the cost of a daily

transcript ordered by the trial court, and the witness fees of four witnesses.

The cost bill as originally filed contained the following: "Reporter's fees, per diems 70 days @ $15.00, $1050.00. One-half Transcript ordered by Court, $1531.00." At the time of the hearing of the motion to tax costs these items were amended on motion of counsel for plaintiff as follows: "Reporter's fees per diems 70 days @ $7.50, $525.00. One-half of reporting and Transcript of testimony as ordered by Court, $2056.00." The following witness fees are challenged: "F. C. Finkle, 18 days attendance @ $2.00 per day, $38.00"; "Louis C. Hill, 22 days attendance @ $2.00 per day, $44.00"; "W. P. Rowe, 27 days attendance @ $2.00 per day, $54.00"; "C. Gully, 33 days attendance @ $2.00 per day, $66.00". The items were taxed in the amounts set forth in the cost bill as amended, subject to a reduction of thirty per cent made on all costs to and including March 2, 1932.

At the commencement of the trial the following colloquy occurred between the court and counsel concerning a daily transcript: "The Court: In making my notes, what arrangement have you made with regard to the reporter's transcript? Are you going to have a daily transcript? Mr. Irving: Yes, sir, the defendants desire a daily transcript. The Court: I think that would be better. Mr. Crump: I do not think the plaintiffs will desire a daily transcript of all of the testimony. There will be a number of lay witnesses that we shall not desire a daily transcript of their testimony. There will be some witnesses where we want a daily transcript, and we will advise the court reporters in advance of that, so that the shift can be made on those witnesses. I do not know what your Honor's custom is in that regard, but it is my understanding—it has been my experience that the daily transcript, unlike the ordinary reporter's fee, is not divided unless both sides desire the daily transcript. One side wants one part, and the other side wants another part. We do not wish to have a daily transcript of the entire proceedings. Mr. Irving: My statement, in response to the court, was made on the assumption that the other side had already requested the reporter to make a daily transcript. The expense will be pretty heavy for one party to be responsible for. In the event that the other side does not desire one, we might also proceed under the same arrangement that Mr. Crump has stated.

We will suggest to the reporter from time to time the portion of the transcript that we would like to have written up. It is going to be rather a hardship on your Honor. The Court: Yes. I was going to say— Mr. Irving: I would suggest that your Honor order an original transcript for the Court; and that the expense of that be divided between the parties; and if any of the parties to the action desire copies of the transcript, that they so designate that portion to the reporter; but I think there should be a transcript made for the convenience of the court. The Court: It will be ordered that a daily transcript be prepared for the court, the expense of same to be stood one-half by each party; and as the parties may desire transcripts, they can arrange with the reporter.''

The reporter was called as a witness and testified that the total number of days in which he was engaged in court in reporting the case was seventy, of which twenty-three were to and including March 2, 1932, and that the total number of folios transcribed were 15,310, of which 4,827 were transcribed to and including the same date. He further testified that three complete copies of the daily transcript were made each day with one delivered to the trial judge and one to each of the parties.

Defendants contend that where a daily transcript is made by two reporters in attendance on the sessions of court but one reporter's per diem charge of $15 can be made for each day's reporting, and that as three complete copies of the transcript were simultaneously made the transcription charges should have been eleven cents per folio for the copy ordered by the trial judge, instead of twenty cents per folio, one-half of which was taxed by the court to defendants. It is admitted that one-half of the per diem reporting costs and one-half of the transcription costs of the court's copy of the daily transcript were paid by defendants as the trial progressed.

Defendants maintain that as the per diem charges of the reporter could only be $15 for each day, one-half of which they paid, the amendment of the cost bill was correct in this respect. They point out that while· the reporter's per diem costs ,were properly reduced by $525, that exact amount was added to the cost of the daily transcript when the cost bill was amended which required them to pay ten cents per folio for transcribing the court's copy of the daily transcript

and an additional $7.50 per day for reporting the testimony. They maintain that as the reporter was entitled to but one per diem the court could not double that fee by indirectly charging it as costs of the daily transcript.

Section 274 of the Code of Civil Procedure, as in effect at the time of the trial, provided in part as follows: ''For his services the official reporter shall receive the following fees, except in counties where a statute provides otherwise: *For reporting testimony and proceedings,* in contested cases, fifteen dollars per day. . . . *For transcription* for one copy, twenty cents per one hundred words; for two copies made at one time, fifteen cents each per one hundred words; for three copies made at one time, eleven cents each per one hundred words; . . . ''

The amount of the per diem fee to be charged where two reporters are in attendance on a single session of court and are making a daily transcript has been settled by the case of *Rappaport* v. *Payne,* 139 Cal. App. 772 [35 Pac. (2d) 183, 184], where it was said: ''With regard to December 21st, we must assume that both reporters were not taking down testimony at the same time but that while one was so engaged the other was transcribing testimony theretofore taken down by him in the same case, and that when he re-appeared in the courtroom after doing so he began taking down testimony and continued to do so while the other was transcribing the testimony taken by him. The $15 *per diem* was fixed by the legislature to cover reporting services. The time the reporter is engaged in transcribing the testimony himself, or in dictating the notes taken for an assistant to write up, is to be paid for out of the fee which the legislature has fixed for transcribing. There would seem to be no need for more than one reporter in court at a time, so far as the actual reporting is concerned, and therefore no need for but one *per diem;* . . . ''

We are of the conclusion that what may not be done directly cannot be accomplished by indirection and that the trial court had no authority to add a reporter's per diem charge to the cost of transcribing the evidence.

■ The question of the amount to be taxed as costs for transcribing the daily transcript where one copy is ordered by the judge, to be paid for equally by the parties, and counsel privately arrange with the reporter for copies for

themselves is settled by the case of *Mt. Shasta Power Corp.* v. *McArthur*, 111 Cal. App. 640 [295 Pac. 1049], where it was said: "The record shows that at the beginning of the trial the court ordered that an original transcript of the testimony be made by the reporter from day to day, and the expense thereof be charged to the respective parties in equal proportions, to wit, at 10 cents a folio, being 20 cents a folio for the transcript ordered by the court. The record further shows that at the time of the making of the order just referred to the plaintiff and the defendants also ordered one copy each of the transcript, at a cost of 6½ cents per folio. On the following day the record shows that the plaintiff desired two extra copies of the testimony, which copies the reporter agreed to furnish the plaintiff, as follows: One extra copy for 4 cents per folio and one extra for 3 cents per folio.

"One-half of the total cost of the original transcript of the testimony ordered by the court amounted to the sum of $675.48. The plaintiff, and also the defendants, in their cost bills, set forth an item of cost in the sum above named, and costs were allowed the respective parties in the sum mentioned, for and on account of the original copy of the transcript of the testimony ordered by the court. . . .

"A reference to the case of *Barkly* v. *Copeland*, 86 Cal. 493 [25 Pac. 3, 4], confirms what we have heretofore stated. In that action the court had ordered an original transcription, chargeable one-half to the respective parties, and thereafter, one of the parties obtained additional copies and inserted the expense thereof in the cost bill. The court in dealing with this question used the following language: 'By the order of the court, this half of the fees thus paid by the defendant in the first instance became a necessary part of the costs and disbursements incurred by him in defense of the action. He was therefore entitled to recover it from his adversary, against whom he obtained judgment. As to the second item, . . . paid by the defendant for the second transcription, he could not recover that or any part of it, from the plaintiff, as neither the latter nor the court had ordered it, but the defendant alone. . . . "The party ordering the reporter to transcribe any portion of the testimony or proceedings must pay the fees of the reporter therefor." ' The record shows in this case that the respective parties were charged, and had paid the amounts apportioned by the court order for the

original transcription. The remaining copies were matters of private agreements.''

Defendants seek to distinguish the Mt. Shasta Power Corporation case from the instant case because of the statement in the quoted portion of that opinion to the effect that the trial court there ordered the parties to pay the cost ''in equal proportions, to wit, at 10 cents a folio, being 20 cents a folio for the transcription ordered by the court''. They suggest that the foregoing language quoted from the opinion was probably a summary of the order made by the trial judge.

An examination of the bill of exceptions in the Mt. Shasta Power Corporation case shows that the inference drawn by defendant that the court in its order fixed the total costs for the transcription at twenty cents per folio, of which ten cents was to be paid by each party, is not supported by the record which shows the following: ''Mr. Jones: Your Honor, before we adjourn, we might state that we desire a daily copy of the transcript. We assume that the other side does, and we think that there should be an original for your honor, the cost to be borne equally by both sides. The Court: (Addressing Mr. Preston) Does that appeal to you? Mr. Preston: Well, I haven't conferred with my clients, but I will give you an answer on that point. The Court: Do you want to talk to your clients first, Mr. Preston? If you do, we will take a recess and take it up at 2 o'clock. Mr. Chenoweth: The reporter ought to know now, your honor. Mr. Preston: Well, I will talk to my clients now. (After conferring with clients.) That is all right. The Court: Mr. Reporter, make an original of the daily transcript, the expense to be borne equally by both sides.''

The order made in the Mt. Shasta Power Corporation case is so similar to the one in the instant case that the decision rendered there is controlling here. The trial court properly taxed against defendants ten cents per folio, or, one-half the statutory cost of transcription of one copy of the record ordered by the trial judge for his own use.

■ The objection to the witness fees of the four witnesses for plaintiffs is based on the evidence of one of the counsel for plaintiffs which is thus summarized in the bill of exceptions: ''The witnesses, F. C. Finkle, Louis C. Hill, W. P. Rowe, and C. Gully were acting both as witnesses in said action and also as expert engineering advisers for the plaintiffs. They were also listening to the testimony given

in the action for the purpose of qualifying them to testify as witnesses in the case. Their presence was required on the days on which they were in court for the reason that plaintiffs did not know at what time it would be necessary to call them as witnesses.''

Defendants urge that as these witnesses were in court as technical advisers to plaintiffs part of the time, and as witnesses part of the time, and as it is impossible to determine the number of days they were in court on the one mission and the number on the other, we should only allow fees for the days each was on the stand testifying. We agree with defendants that a party should not be permitted to tax as costs witness fees of expert witnesses while sitting in the courtroom merely as ''expert engineering advisers for the plaintiffs'' or while merely ''listening to the testimony given in the action for the purpose of qualifying them to testify as witnesses in the case.'' When acting as expert advisers only they were not in any sense attending court in the capacity of witnesses. While listening to the testimony for the purposes specified they were gathering data for the purpose of becoming witnesses. The time spent by an expert witness in gathering data to qualify himself to testify should not be charged to the adverse party no matter whether that time be spent in the office, in the field, or in the courtroom. (*Miller* v. *Highland Ditch Co.*, 91 Cal. 103 [27 Pac. 536].)

However, the attorney also testified that the presence of the four witnesses ''was required on the days in which they were in court for the reason that plaintiffs did not know at what time it would be necessary to call them as witnesses.'' A party is entitled to tax as costs all the time actually spent by a witness attending the sessions of court while waiting to be called to the stand.

The statements in the evidence of the attorney seem to be conflicting. Conflicts in the evidence are addressed to the trier of fact and we cannot reverse an order or judgment because of conflicts in the evidence.

The trial court was in error in including the $525 reporter's per diem in the cost bill under the item charging for transcription of evidence. The order taxing costs has already reduced this amount by $51.75, being 30 per cent of the portion of this item accruing to and including March 2, 1932, leaving a remainder of $473.25 which should be deducted from the $2,660.56 taxed as costs by the trial court. It is

admitted that the fees of the witness Finkle should have been taxed at $36 instead of $38, and plaintiff agrees to a reduction in that sum of $2 for the erroneous computation of the fees of this witness.

It is ordered that the sum of $2,660.56 taxed as costs by the trial court be reduced by deducting the sum of $475.25 therefrom leaving a balance of taxable costs in the sum of $2,185.31, and that the order taxing costs be modified in that respect, and as so modified is affirmed. The parties will each pay their own costs on appeal.

Barnard, P. J., and Jennings, J., concurred.