[Crim. No. 5907.   Second Dist., Div. One.   July 15, 1957.]

THE PEOPLE, Respondent, v. STANLEY JENDREJK,
Appellant.

Stanley Jendrejk, in pro. per., and Philip M. Gilbert for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

FOURT, J.—In an information filed December 29, 1955, in Los Angeles County, the defendant was charged with three counts of burglary allegedly committed on November 25, 1955, December 2, 1955, and December 3, 1955, respectively. The defendant's motion under section 995 of the Penal Code was granted as to count I and denied as to counts II and III. On June 1, 1956, an amended information was filed, the first three counts of which charged the defendant with the same burglaries theretofore charged and the fourth count charged the defendant with grand theft allegedly committed on December 3, 1955. A trial by jury was waived, and pursuant to stipulation the cause was submitted on the transcript of the preliminary examination with each side producing additional evidence. Count I was, upon motion of the district attorney, dismissed and the defendant was found guilty as charged as to counts II and III, and not guilty as charged as to count IV. The degree of the offenses was fixed at second degree burglary.

The defendant made a motion for a new trial which was granted. His attorney withdrew from further representation of the defendant, and thereafter the defendant acted as his own counsel. Prior to retrial the defendant made a motion

under section 995 of the Penal Code to dismiss counts II and III, and further made a motion to dismiss because of a delay in the retrial of the cause, each of which motions was denied.

The second trial was with a jury and resulted in the defendant being found not guilty as charged in count II, and guilty as charged in count III, and further the jury found the offense to be burglary in the second degree. The defendant's motion for a new trial and probation was denied and he was sentenced to serve three months in the county jail. The appeal is from the judgment and the order denying the motion for a new trial.

A fair summary of the evidence is as follows: Eugene Smith, the electrical supervisor of the Pacific Electric Railway Company (hereinafter referred to as the Company) testified that he was in charge of all electrical work, power plants and substations operated by the Company; that the Ivanhoe Station at Riverside Drive and Glendale Boulevard was one of such substations of the Company where cars were formerly serviced, but which such service was discontinued on June 1, 1955, and the substation was thereafter locked. Further, he testified that the substation housed electrical generating equipment, shunts, transformers, circuit breakers, switching equipment and other electrical apparatus, and that personnel from the Company made routine inspections of such equipment each eight or 10 days. Further, that he had made such an inspection on December 1, 1955, at which time he noted that 1,200 feet of cable of varying sizes had been removed and about 1,800 pounds of copper, several switches, circuit breakers, and 12 cable lugs were missing. Also, some flat copper pieces had been removed from the back of a switchboard. He further testified that he had returned to the substation between 9 and 9:30 o'clock a.m. on December 2, 1955, and at that time noticed that two or three pieces of cable which had been there the previous day, and attached to the rotary converter, were missing, as were some additional shunts. Smith did not give the defendant permission to enter the substation nor to remove anything therefrom.

James Cole, the chief special agent of the Company, testified that he went to the substation in question on December 1, 1955, and could easily see that a considerable amount of equipment had been dismantled and several pieces of copper had been cut, and that when he left the premises at about 4:30 o'clock p. m., he was the last person to leave and that he locked the building at that time. He stated further that he returned the

next day about 11 o'clock a. m. and observed that three cables, which were connected to the rotary converter, had disappeared and that one of the back doors of the building was slightly ajar and one of the rear windows had been unlatched, and further that of the nine cables remaining attached to the rotary converter, the bolts had been removed from three of them. He remained at the substation for the balance of the day and the establishment was kept under surveillance. Cole and his assistant, Nimmo, remained there until about 4:30 o'clock p. m., at which time Nimmo was relieved by Officer Trout of the Los Angeles Police Department. Cole, who had stayed at the substation with Officer Trout, examined the premises about 11 o'clock p. m., and observed that nothing further was missing and that the cables were still attached to the rotary converter.

Sterling Nimmo, special agent of the Company, testified that about midnight, December 2, 1955, he went to the substation and relieved Cole and Trout and thereafter, until about 11 o'clock a. m. the next morning, kept the premises under surveillance from a point about 200 yards away. He further stated that about 2:30 o'clock a. m. he saw a 1935 Chevrolet two-door black sedan automobile traveling southbound on Glendale Boulevard. The car under observation passed the point where Nimmo was stationed, crossed Riverside Drive, and continued in a southerly direction until it reached a point opposite the driveway leading into the substation, when the headlights on the vehicle went out and the car made a quick left turn into the yard. The car thereupon passed out of Nimmo's sight, and about 10 minutes later the same Chevrolet emerged from the driveway and made a right turn onto Glendale Boulevard, the headlights were turned on and the vehicle continued north on Glendale Boulevard, passing the place where Nimmo was stationed. Nimmo followed the car and secured the license number which was 2T15739, and identified the sole occupant of the car as the defendant. Nimmo explained that he did not arrest the defendant at the time because he felt that the defendant had not had sufficient time to remove any material from the substation, but that the defendant was there for the purposes of reconnoitering and that he planned to return later. After trailing the car and being absent for about 15 minutes Nimmo returned to the substation and kept it under surveillance until 8 o'clock a. m. the following morning, during which time no one else came to the substation. The following morning Nimmo, with

Officers Trout, Oakes and Special Agent Cole, entered the substation through the front door, which they found locked. They found the rear door and the window on the west side open and observed that there were only seven cables left attached to the rotary converter.

Officer Trout testified that when he went into the substation with Nimmo, Cole and Oakes, he found that two more cables had been detached from the rotary converter since the day previous, and that upon getting the license number of the Chevrolet automobile from Nimmo and Oakes he had checked with the Motor Vehicle Department to determine the ownership of the car in question. He stated that he received a name and an address and went to 3320 Prospect Avenue, La Crescenta. He further testified that there was a black two-door Chevrolet automobile bearing the license number 2T15739 inside the driveway at 3319 Prospect Avenue, which is across the street from 3320 Prospect Avenue. Trout went to the door of the house at 3319 Prospect Avenue and Mrs. Jendrejk answered, after which he went around the side of the house where he met the defendant. From the point of meeting, Trout could see into the back yard, where he observed an incinerator with the door partly open, and something burning in it. He further saw a coil of wire lying on the ground. Trout identified himself by his identification card and badge and made inquiries of the defendant if the 1935 Chevrolet automobile in the front of the garage was his, to which the defendant replied that the car was his, and also the defendant later stated that no one had used it other than himself. Trout then informed the defendant that he was being placed under arrest for suspicion of burglary, and stated that he would like to enter the property, to which the defendant replied that Trout could not so enter. Trout then replied, ''Well, you are under arrest. . . . I am afraid I will have to come in.'' Trout and Cole with the defendant walked into the back yard to the incinerator and opened the door thereof and observed a coil of wire with the insulation partly intact, together with another coil in the same condition burning in the incinerator. The burning cable was similar to that which was missing from the substation and was removed from the fire. There were seven coils of wire lying on the ground in the yard. Trout also found cable lugs on the ground adjacent to the incinerator, and he found several shunts in the defendant's garage. Other and additional electrical equipment similar to that missing from the substation was found on the defendant's property.

When the defendant was asked where he got the wire, he replied that he was a prospector and the particular wire had come from an abandoned airfield about 11 miles north of Tonopah, Nevada, on Highway Number 6. The defendant further stated, in answer to questions put by Trout, that he (the defendant) had questioned residents of the Tonopah area and that they had told him that the airfield was abandoned and he thought he had a right to salvage the material. Upon going to the police station, the police and the defendant drove by the substation and the defendant stated at that time that he had never seen the substation nor had he any occasion to be there at any time. At the police station, shortly after his arrival, the defendant maintained that he had obtained the property found in his yard at or near Tonopah, Nevada. The next day the defendant materially altered or changed his story as to how he had secured the material in question.

The defendant testified in his own behalf and stated that he had not entered the substation, nor had he taken any material from the station; further, that the material found in his yard had come from an abandoned airfield out of Tonopah, Nevada. He further testified that while out on bail he had gone to Nevada and taken pictures of the place where he had obtained the electrical equipment. He stated that one picture was of a scene at the air base inside of one of the buildings at such base. In rebuttal the plaintiff caused to be introduced testimony to the effect that the air base was not abandoned and that the picture which the defendant testified to as being taken from inside of one of the air base buildings was not taken at the air base at all, but was of the interior of a power house at the Mizpah Mine in Tonopah, some 8 miles from the base.

The appellant makes several contentions, the first of which is that it was prejudicial error to force, or even allow him to proceed to trial without the aid and assistance of counsel. At the start of the trial the trial judge carefully inquired of the defendant if it was his desire to represent himself, and the defendant answered that such was his will and desire. He was told by the judge that he had a right to counsel and that the court would appoint counsel for him, in the event he so desired, and further, that it was an important matter because the charge was a serious one. The district attorney even told the defendant that he should have counsel to represent him. ■ A defendant, of course, may waive his right to counsel. (*In re Connor*, 16 Cal.2d 701, 706 [108 P.2d 10]; *People* v. *O'Neill*,

78 Cal.App.2d 888 [179 P.2d 10].) In this case it is difficult to see what more the trial court could have done than to advise and caution the defendant as he did.

The next claim of error is that the court abused its discretion in denying to the defendant the right to have a daily transcript. On the third day of the trial the defendant first requested the daily transcript. The court went into the matter and determined that it would be a very substantial expense to the county of Los Angeles, and it would not be of any substantial assistance, and therefore denied the request. The court said in *People* v. *Chait,* 69 Cal.App.2d 503, at page 524 [159 P.2d 445] : "Whether, in a criminal case, these proceedings shall be transcribed daily and a copy furnished the defendant is a matter properly left to the discretion of the trial court." (See also Code Civ. Proc., § 269.) There is no showing whatsoever in this case of any abuse of discretion in this instance.

The next contention is that the judge committed prejudicial error in failing to inform the defendant of his right to challenge the jurors. Penal Code, section 1066, provides: "Before a juror is called, the defendant must be informed by the court, or under its direction, that if he intends to challenge an individual juror he must do so when the juror appears, and before he is sworn."

The record on appeal before us does not contain the proceedings relative to the selection of the jury. Matters outside of the record cannot be considered on appeal. (*People* v. *Villarico,* 140 Cal.App.2d 233, 236 [295 P.2d 76] ; *People* v. *Croft,* 134 Cal.App.2d 800, 804 [286 P.2d 479].) Furthermore, the court. in this particular instance asked if both sides were "satisfied with the jury, is that right," and the defendant and the district attorney each replied, "Yes, your Honor."

Appellant by letter about five months after his notice of appeal and request for additional record were filed, suggests that this court further augment the record by including "all voir dire examination of the jurors in the trial together with any and all comments made by the court during said examination and selection of the jury." At the time of oral argument counsel made a motion to so augment the record. We are of the opinion that under the circumstances here presented the record before us is ample and sufficient.

The next contention is that the defendant did not waive time for sentence. Judgment must be pronounced within 21 days after the verdict, during which time the judge shall refer the

case to the probation officer for report, if eligible for probation. The court has the power to extend the time until the probation officer's report is filed, and until any proceedings having to do with probation have been disposed of. (Pen. Code, § 1191.) In this case the jury returned its verdict December 4, 1956. On December 26, 1956, the defendant moved for a new trial which was denied. Further proceedings as to count III were continued to January 23, 1957, at which time judgment was entered and sentence imposed. ■ When the jury returned the verdict the defendant indicated that he did not want probation and in a discussion the judge stated, ". . . you do waive time for sentence so that we will have time enough to get the probation report, otherwise you will be sentenced within the statutory time." And the defendant replied, "That is right." The defendant later agreed to put in an application for probation, and on January 23, 1957, expressly asked for probation. It is apparent that the defendant waived the time within which to have sentence imposed. ■ However, and in any event, under section 1191, Penal Code, the court "may further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of."

■ The defendant also contends that the court erred in permitting count I to be set forth in the amended information after it had been dismissed theretofore in the first proceeding. At the second trial the defendant faced only the charges set forth in counts II and III of the amended information. No possible prejudice could result to the defendant by the procedure which was taken.

Next, the defendant contends that there is no evidence showing the essential element of burglary, namely, an entry into or onto the premises of the Company. The testimony has heretofore been set forth at some length and no useful purpose would be served in summarizing it further at this point. Suffice it to say that the evidence is ample to support the judgment.

Defendant's last contention is that his motion to dismiss for the delay in the retrial should have been granted. Penal Code, section 1382, subdivision 2, provides as follows:

"The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases:

. . . . . . . . . . . . .

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial in a superior court within 60 days after the finding of the indictment, or filing of

the information, or in case a new trial is to be had following an appeal from the superior court within 60 days after the filing of the remittitur in the trial court.''

Here, the motion for a new trial was granted October 1, 1956. On November 21, 1956, the defendant's motion to dismiss was argued and denied, and on November 27, 1956, the retrial commenced. ▇ The commencement of the 60-day period within which a defendant must be tried starts with the filing of the indictment or information, but where the first trial results in a mistrial, another 60-day period starts from the determination of the mistrial. (*In re Begerow,* 133 Cal. 349 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513] ; *People* v. *Scott,* 84 Cal.App. 25 [257 P. 1118] ; *In re Scott,* 81 Cal.App. 577 [254 P. 596].) In *People* v. *Marshall,* 209 Cal. 540 [289 P. 629], it was held that where a conviction has been reversed on appeal, and where the retrial occurs within 60 days after the filing of the remittitur, a motion to dismiss is properly denied. The appellant's trial in this case commenced within 60 days from the date his new trial was granted (October 1-November 27), and the court did not err in denying the motion to dismiss.

We find no prejudicial error in the record.

We decline to follow the suggestion that we augment the record as indicated, and the motion to so augment is denied.

The judgment and the order denying the defendant's motion for a new trial are, and each is, affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 11, 1957.