[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 644 
OPINION
Doimonique Abernathy is charged with murder (Pen. Code, § 187), [1]
as well as with a special circumstance allegation making her eligible for the death penalty. (§§ 190.2, subd. (a)(17)(A), 190.3, 190.4.) By petition for writ of mandate, she challenges an order of the Contra Costa County Superior Court denying her request for daily transcripts of her preliminary examination. She contends that section 190.9, subdivision (a)(1) (hereafter subdivision (a)(1)) requires the transcripts, so that the magistrate had no discretion to deny her motion.[2] We agree, and, having previously issued a stay of the preliminary examination and an alternative writ of mandate, direct issuance of a peremptory writ.
 BACKGROUND
Abernathy's initial motion was made to the superior court judge sitting as a magistrate (People v. Toney (2004) 32 Cal.4th 228, 230, fn. 2 [8 Cal.Rptr.3d 577, 82 P.3d 778]) assigned to preside over the preliminary hearing. Upon denial of her motion, Abernathy appropriately petitioned for writ of mandate to the superior court (People v. SuperiorCourt (Jimenez) (2002) 28 Cal.4th 798 [123 Cal.Rptr.2d 31, 50 P.3d 743]), and upon denial of the petition, sought relief from this court.
The magistrate read subdivision (a)(1) to require distribution of daily preliminary hearing transcripts only in those cases in which the prosecutor has announced a decision to seek the death penalty. Because no decision had been announced in this case, the magistrate denied the motion. Denying *Page 646 
Abernathy's petition for writ of mandate, the superior court agreed with the magistrate, reading subdivision (a)(1) in conjunction with rule 8.613 of the California Rules of Court and with section 190.9, subdivision (b)(2) to conclude that absent the prosecutor's decision and the setting of a trial date, daily preliminary hearing transcripts were not required. In addition, the superior court denied the writ petition because "[u]ntil there is a holding order the superior court does not have jurisdiction to conduct a capital trial."
The People contend that section 190.9, subdivision (a)(1) does not authorize or entitle any party to obtain daily transcripts, because the statute is one of several concerned solely with the timely preparation and certification of the record in death penalty cases, which, by their express terms, impose obligations on the court, court reporter, and court clerk. (See §§ 190.6, 190.7, 190.8.) To the extent that court personnel fail to comply with subdivision (a)(1), the People advance the additional argument that Abernathy lacks standing to complain.
 DISCUSSION
We address the standing argument first. "As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. (Pacific Legal Foundation v. California Coastal Com. (1982)33 Cal.3d 158, 169-172 [188 Cal.Rptr. 104, 655 P.2d 306]; MunicipalCourt v. Superior Court (1988) 202 Cal.App.3d 957, 960-964 [249 Cal.Rptr. 182]; California Water Telephone Co. v. County of LosAngeles (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 73-74, pp. 132-135.) To have standing, a party must be beneficially interested in the controversy; that is, he or she must have `some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' (Carsten v. PsychologyExamining Com. (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844,614 P.2d 276].) The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical." (Holmes v. California Nat. Guard (2001)90 Cal.App.4th 297, 314-315 [109 Cal.Rptr.2d 154].)
Abernathy meets the foregoing standards. She avers that "[d]aily transcripts facilitate impeachment of witnesses, thorough examinations, *Page 647 
narrowly-tailored examinations, adequate record-making, follow-up, and avoidance of repetition." And she is charged with a capital crime. "A defendant charged with a `capital offense,' i.e., murder with special circumstances, may suffer the death penalty if the special circumstance allegations are proved true and if, at the penalty phase, the jury determines that the penalty is appropriate." (Sand v. Superior Court
(1983) 34 Cal.3d 567, 575 [194 Cal.Rptr. 480, 668 P.2d 787].)
Ordinarily, resolution of a motion for daily transcripts[3] lies within the sound discretion of the superior court. (Code Civ. Proc., § 269;People v. Chait (1945) 69 Cal.App.2d 503, 524 [159 P.2d 445]; Peoplev. Jendrejk (1957) 152 Cal.App.2d 462, 468 [313 P.2d 881]; People v.Morgan (1956) 140 Cal.App.2d 796, 806 [296 P.2d 75].) But subdivision (a)(1) provides that "[i]n any case in which a death sentence may be imposed, all proceedings conducted in the superior court, including all conferences and proceedings, whether in open court, in conference in the courtroom, or in chambers, shall be conducted on the record with a court reporter present. The court reporter shall prepare and certify a daily transcript of all proceedings commencing with the preliminary hearing. Proceedings prior to the preliminary hearing shall be reported but need not be transcribed until the court receives notice as prescribed in paragraph (2)."[4] The interpretation and construction of subdivision (a)(1) are questions of law which we determine de novo. (County of LosAngeles v. Superior Court (1993) 18 Cal.App.4th 588, 594 [22 Cal.Rptr.2d 409].)
"The fundamental rule of statutory construction is that the court ascertain the intent of the Legislature from an examination of the statute as a whole. (Select Base Materials v. Board of Equal. (1959)51 Cal.2d 640, 645 [335 P.2d 672]; Rice v. Superior Court (1982)136 Cal.App.3d 81, 86 [185 Cal.Rptr. 853].) We do this in order to be certain that our construction and application of the statute will effectuate the purpose of the law. (Moyer v. *Page 648 Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144,514 P.2d 1224].) This process requires that we first look to the plain meaning of the words used and their juxtaposition by the Legislature (People v. Knowles (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1]); and we are bound to give effect to a statute according to the usual and ordinary import of those words. (Rich v. State Board of Optometry (1965)235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) We may not add to or alter those words in order to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (Brown v.Superior Court (1990) 224 Cal.App.3d 989, 992 [274 Cal.Rptr. 442].)" (County of Los Angeles v. Superior Court, supra,18 Cal.App.4th at p. 594.)
As Abernathy correctly argues, the plain language of subdivision (a)(1) is unambiguous. It makes no mention of the prosecutor's decision to seek the death penalty, nor any requirement of a holding order. (§ 872.) Instead, subdivision (a)(1) expressly requires preparation of a daily preliminary hearing transcript "[i]n any case in which a death sentence may be imposed." Moreover, no statute or case law requires the prosecutor to give a notice of the intention to seek the death penalty.[5] Nothing in section 190.9 requires a holding order and the setting of a trial date as prerequisites to the requirement of daily preliminary hearing transcripts.
Still, "[w]hen used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (Moyer v. Workmen's Comp. Appeals Bd.[,supra,] 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224];Johnstone v. Richardson (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)" (People v. Black (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) Section 190.9, subdivision (a)(2), separately specifies the duties of the court clerk concerning the preparation of the record for cases in which the prosecutor has given notice of intention to seek the death penalty, and makes reference to the California Rules of Court. Rule 8.613 — relied upon by the superior court in denying Abernathy relief — sets forth procedures implementing section 190.9 *Page 649 
with regard to preparation of the record for a capital appeal.[6]
Section 190.9 is one of several statutes concerned with expeditious record preparation in capital appeals. In context, therefore, subdivision (a)(1) arguably is concerned solely with such record preparation.
"[I]f more than one reasonable construction of the statutory language is possible, then we should look at the legislative history and other extrinsic aids to determine the legislative purpose and adopt the construction which most closely serves it. (Moyer v. Workmen's Comp.Appeals Bd., supra, 10 Cal.3d at p. 232; People ex rel. Riles v. WindsorUniversity (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378]; Wilsonv. Board of Retirement (1959) 176 Cal.App.2d 320, 324
[1 Cal.Rptr. 373].)" (County of Los Angeles v. Superior Court, supra,18 Cal.App.4th at pp. 594-595, fn. omitted.)'
Former section 190.9 was originally enacted in 1984 along with section 190.8, with the latter section providing for the expeditious certification of the record on appeal in cases in which the death penalty has been imposed, and section 190.9 providing that "[i]n any case in which a death sentence may be imposed, all proceedings . . . including proceedings in chambers, shall be conducted on the record with a court reporter present." (Stats. 1984, ch. 1422, § 2, p. 4994.)
In 1989, section 190.9 (which did not require preparation and certification of a daily transcript of proceedings) was amended to include the requirement. (Stats. 1989, ch. 379, § 2, pp. 1534-1535.) As with the predecessor version of section 190.9, the amendment was concerned with expeditious preparation of the record in anticipation of an appeal. However, assistance to prosecution and defense in the preparation and presentation of their cases was also a goal of the legislation. As the report of the Assembly Committee on Public Safety (chaired by the bill's author, then Assemblyman John Burton) explained, the bill would "help ensure that an accurate record is prepared in all cases and to provide statutory direction to replace inconsistent and inefficient management of court reporter time and service." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 1436 (1989-1990 Reg. Sess.) as amended May 3, 1989.) In addition, "[p]rovisions of a daily transcript will assist both the prosecution and defense in the presentation of their cases. It would enable the attorneys to concentrate on what the witnesses are saying, rather than taking notes. They *Page 650 
will be particularly helpful in cases involving multiple defendants and numerous criminal counts and legal motions. Attorneys will be able to read the transcripts on a daily basis to embellish areas of significance and impeach witnesses. They will serve to avoid repetitive testimony and disputes as to previous testimony.
"Transcripts will be helpful to investigators who will be able to pick out details of significance and follow-up investigations. Closing arguments will be more accurate and transcripts may serve to avoid building error into an appeal. If a judge has second thoughts about a ruling, it will be easier to reconsider a ruling with the record before him or her." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 1436 (1989-1990 Reg. Sess.) as amended May 3, 1989.)
The dual purposes expressed in the foregoing legislative history support a construction of subdivision (a)(1) requiring the provision of daily preliminary hearing transcripts to the parties and the court.[7]
 CONCLUSION AND DISPOSITION
We conclude that Penal Code section 190.9, subdivision (a)(1) requires the preparation and certification of daily transcripts of the preliminary hearing in this case which is one in which a death sentence may be imposed. On this record, defendant Abernathy's request for the transcripts must be granted.
Therefore, let a peremptory writ of mandate issue commanding respondent, County of Contra Costa Superior Court, in People v.Abernathy (Nos. 071460-0 04-149466-5) to set aside its September 18, 2007 order denying Doimonique Abernathy's motion for daily transcripts of the preliminary hearing, and to instead grant the motion. *Page 651 
The stay previously imposed shall remain in effect until the remittitur issues.
Swager, J., and Margulies, J., concurred.
[1] Further statutory references not otherwise noted are to the Penal Code.
[2] It is well settled that the absence of a record of proceedings mandated by section 190.9 is not ground for reversal on appeal absent a showing of prejudice. (People v. Frye (1998) 18 Cal.4th 894, 941 [77 Cal.Rptr.2d 25, 959 P.2d 183].) Here our concern is with the obligation of the court to provide the record during the proceeding upon timely request.
[3] "Daily transcript" traditionally has been understood to mean a transcript prepared each day and supplied immediately to the court and parties during the course of the proceeding. (See, e.g., Fraser v. Payne
(1935) 3 Cal.2d 630 [45 P.2d 345]; Corona Foothill L. Co. v. Lillibridge
(1936) 12 Cal.App.2d 549 [55 P.2d 1210].)
[4] Paragraph 2 of subdivision (a) provides: "Upon receiving notification from the prosecution that the death penalty is being sought, the clerk shall order the transcription and preparation of the record of all proceedings prior to and including the preliminary hearing in the manner prescribed by the Judicial Council in the rules of court. The record of all proceedings prior to and including the preliminary hearing shall be certified by the court no later than 120 days following notification unless the time is extended pursuant to rules of court adopted by the Judicial Council. Upon certification, the record of all proceedings is incorporated into the superior court record."
[5] Section 987.9 (requiring funds for indigent defendants in capital cases), for example, does not require notice from the prosecutor. But the district attorney's voluntary formal notice declining to seek the death penalty precludes authorization of such funds. (Sand v. Superior Court,supra, 34 Cal.3d at p. 575.) Subdivision (a)(2) of section 190.9 specifies certain procedures when the prosecutor gives notice of intention to seek the death penalty; however, it does not require such notice.
[6] California Rules of Court, rule 8.613 provides in subdivisions (a) through (l) the responsibilities for the court, reporters, and counsel for preparing and certifying the record of preliminary proceedings.
[7] This construction of subdivision (a)(1) finds support in the unanimous view of our Supreme Court that the provisions of section 190.9 and section 190.8 (concerning record correction during capital trials) "should minimize the need for any but minor record correction" postconviction. (Marks v. Superior Court (2002) 27 Cal.4th 176, 189 [ 115 Cal.Rptr.2d 674, 38 P.3d 512].) *Page 652