[L. A. No. 14974.   In Bank.—May 17, 1935.]

STANLEY FRASER, Respondent, v. H. A. PAYNE, as County Auditor, etc., et al., Appellants.

MARIE KELLER, Respondent, v. H. A. PAYNE, as County Auditor, etc., et al., Appellants.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard and Fred M. Cross, Deputies County Counsel, for Appellants.

McAdoo & Neblett for Respondents.

Buron Fitts, District Attorney, and A. H. Van Cott, Deputy District Attorney, as *Amici Curiae* on Behalf of Respondents.

PRESTON, J.—There are before us three consolidated cases in mandate against the County of Los Angeles and its Auditor and Treasurer, to compel payment of certain charges made by petitioners, as court reporters, for making daily transcripts ordered by the trial judge on the suggestion of the parties in two certain criminal proceedings held in the superior court of said county. Relief was given each petitioner and the writs made peremptory. From all the judgments respondents have appealed on a transcript which shows the facts to be undisputed.

██ In two of the cases, Nos. 337,379 and 337,380, the daily transcripts ordered and furnished were merely of the proceedings taken upon empanelment of the jury in the cause of *People* v. *Clark,* a murder case. Some seven or eight days were consumed in selection of a jury and of such proceedings the reporters made daily transcripts of their notes, compensation for which constitutes the charges which are the subject of the above-numbered of these consolidated cases. Said charges in the aggregate amount to $1165.32. In the criminal case the defendant was later acquitted.

The question presented is that of the propriety of an order of the court for daily transcripts under circumstances and conditions such as here shown. It does not appear that upon empanelment of said jury any challenges for cause were made and disallowed or that any other questioned rulings were made. We are unable to see any legitimate use that could have been made of the transcripts. If questioned rulings were made, advantage of them could not be taken until after conviction of the defendant and only then upon a motion for new trial or on appeal. The time to order a transcript of the examination of talesmen would not seem to arise until after the trial and conviction of a defendant in a criminal case. ██ It may be possible that under circumstances which do not now occur to us, it would be expedient to have an immediate transcript of all or some parts of the examination of a venireman, but it is clear that a wholesale daily transcript *in toto* of *voir dire* examinations, at the expense of the county, cannot be defended. It is proper, of course, to have the reporter take notes of such proceedings, but to put the county to the expense of purchasing a full daily transcript thereof cannot be justified. The briefs indulge a liberal discussion of certain statutory provisions as well as of the inherent powers of the court relating to this subject, but as to the two cases above numbered, we hold that a discussion of these matters is unnecessary for we are compelled to state that an abuse of judicial discretion is present in both instances. The fact that the notes were transcribed at the request of or with consent of the parties does not weaken this conclusion.

██ As to the third case, No. 337,381, the facts are that petitioner Keller, a court reporter, made stenographic notes

of the trial of a certain felony case, *People* v. *Hitchcock and Downing,* and made a daily transcript of three classes of items, to wit: (1) testimony, (2) exhibits introduced, and (3) argument of defendants' counsel. The claim urged was $172. The court allowed the items for testimony and exhibits, but disallowed the item for argument of counsel for the defense. Petitioner did not appeal from the order reducing the claim. The claim, as reduced, was for $111.30, to pay which the court ordered a peremptory writ. The propriety of this charge, as so reduced, we cannot question except to say that a daily transcript of documents in evidence would under ordinary circumstances be an unnecessary expenditure of county funds. We cannot say there was such an abuse of discretion in this particular instance as it is reasonable to suppose that the transcript served some proper purpose. We can see no possible defense, however, for the practice of furnishing a daily transcript that cannot be used as part of the reporter's transcript on appeal.

The power of the court to order, at the expense of the county, a daily transcript of notes of the testimony, objections made, rulings of the court, exceptions taken, arraignments, pleas, sentences of defendants in criminal cases, arguments of the prosecuting attorney to the jury, and all statements and remarks made and oral instructions given by the judge, must be answered by a consideration of the provisions of section 269 of the Code of Civil Procedure, in connection with section 274 of said code. The former section, paraphrased, reads:

"The judge . . . of any superior court . . . may appoint a competent phonographic reporter. . . . Such reporter . . . must, at the request of either party, or of the court in a civil action or proceeding, and on the order of the court, the district attorney, or the attorney for defendant in a criminal action or proceeding, take down in shorthand all the testimony, the objections made, the rulings of the court, the exceptions taken, all arraignments, pleas, and sentences of defendants in criminal cases, the arguments of the prosecuting attorney to the jury, and all statements and remarks made and oral instructions given by the judge; and if directed by the court, or requested by either party, must, within such reasonable time after the trial of such case as

the court may designate, write out the same, or such specific portions thereof as may be requested . . . and certify to the same . . . and when directed by the court file the same with the clerk of the court.''

While it is true that the reporter may not be compelled under this section to furnish an *instanter* transcript of his notes but is entitled to a reasonable time after the trial to do so, still that does not mean that if he voluntarily complies with the order of the court, his fees for such work may not be made a charge against the county. If the power to issue the order exists at the close of the trial, it would exist during the trial. The problem is to get the order obeyed; if this is done, the process is complete. As already noted, injury to the county ordinarily would not result until the county was required to pay for a second transcript of the reporter's notes. Section 274 of said code clearly gives the trial judge the power to order paid by the county the sum necessary to comply with an order lawfully made by it in a criminal case under the former section. We are strengthened in our interpretation of section 269 by the recent legislative pronouncement expressly declaring said section to confer this power upon the trial court. (Stats. 1933, chap. 740, pp. 1802, 1803.) Of course, this amendment cannot be considered as expressly conferring such authority inasmuch as it was subsequently enacted but it can be used as a persuasive key for the interpretation of said section.

This conclusion makes unnecessary a discussion of the question as to when the inherent power of the court may be invoked to stop the threatened encroachment upon its exclusive domain by the legislative branch of the government.

Accordingly, the judgments in cases 337,379 and 337,380 are reversed; the judgment in case 337,381 is affirmed.

Curtis, J., Thompson, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.