[Crim. No. 5467.   Second Dist., Div. Two.   Apr. 16, 1956.]

THE PEOPLE, Respondent, v. ROBERT ERWIN MORGAN, Appellant.

Robert Erwin Morgan, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant having been convicted of forgery and a charge of prior conviction of felonies—issuing check without sufficient funds and grand theft—having been found to be true, he appeals from the judgment and order denying motion for new trial and attempts to appeal from an order denying a motion in arrest of judgment. Appearing in propria persona he advances numerous contentions, none of which is meritorious.

In varying forms appellant asserts insufficiency of the evidence. The familiar rule governing review is thus stated in *People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911]: " ' " [B]efore the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground" of insufficiency of the evidence, "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict." ' " The evidence at bar abundantly establishes the fact of defendant's guilt. He did not take the stand to deny it but did through stipulations and statements in oral argument supply considerable substantial corroboration of the prosecution witnesses.

On Saturday, December 18, 1954, defendant presented to James M. Ross, an employee of Ralph's Grocery Company who was in charge of cashing checks at its store at Third and Vermont Streets, Los Angeles, a certain check for $25 payable to cash and bearing a signature, "Joseph M. Burman." The signature had been written by defendant, who knew Joseph M. Burman to be a prisoner in the county jail; Burman had not authorized defendant to sign his name to any check or to endorse his name upon any such instrument. In Ross' presence defendant endorsed the name Joseph M. Burman on the back of the check and wrote the word "cash" below it. Ross asked defendant for identification and he produced a tem-

porary driver's license issued to said Burman; the license bore the address of 725 South New Hampshire, which was Burman's residence when not in jail. The check bore an address of 715 South New Hampshire. Ross, noticing the discrepancy, asked defendant which one was correct and he said the one on the driver's license; Ross then changed 715 to 725 where it appeared on the check and asked how he could verify the identification; defendant gave him a telephone number as that of his own office; Ross wrote that number on the check, said he would have to verify the same and went to a convenient telephone for that purpose. Defendant, who was just out of jail and had no office, started to leave the store "rather hurriedly." Ross saw this, followed him and called out asking defendant if he wanted the check or his change; defendant, then some distance from the store, started to run. At Ross' request James W. Watkins, another Ralph's employee who had seen defendant present the check and then leave the store, joined in the chase and he and Ross caught defendant, subdued him after a struggle and took him forcibly back to the store where he was held until police arrived. When asked why he left without getting money on the check defendant said it was getting around Christmas time and he did not want to have any trouble or get involved and he would just rather leave the check there and for them to keep it; that they could keep it and keep the money from it. He also said that the check was not good at that time but it would be when it was paid; that it would be good when presented to the bank on Monday morning. (It was then Saturday.) In the office, while waiting for the police, defendant repeated that the check was not then good but said it would be honored on Monday. He also told the arresting officer, one Wells, that the check was not then good but would be so on Monday. To Officer Boring, on December 20th, defendant said that he had presented the check at Ralph's grocery store on Saturday, that People's exhibit 1 which was then shown him was the check, that as "they" were going to verify it he started to leave the store without getting any money or merchandise, that Joseph M. Burman was a name that he used because he had the identification for that name, that he did not know Burman, that he had just recently been released from the county jail on an appeal bond and had several contacts to make where he could obtain some money that was owed him, that he had been unsuccessful in accomplishing this, needed some money to live on until the first of the week and used

this method to get some money to provide for himself until Monday when he intended to open an account in the name of Joseph M. Burman to make this check good. Asked what he had shown for identification he said that he had used the temporary driver's license that was taken from him at the time of his arrest (being People's Exhibit 2); that he had found it in a waste basket in the office of his attorney, Lowell Lyons. "I asked him if he knew a Joseph Burman and had permission to sign his name and he said he did not, that he intended to open this account and that this check would be good upon presentation." Defendant also said that as soon as he got some money from these various contacts he would open an account in the name of Joseph Burman so that this check would clear.

Joseph M. Burman testified that he last saw the driver's license in his own wallet which he gave to his wife with instructions to turn it over to his attorney, Lowell Lyons. Also that he gave defendant no permission to use the license for identification or otherwise and did not authorize him to sign the Burman name or to endorse it on any check; that he had no account in the branch bank on which the subject check was drawn.

Although defendant did not testify, he said to the jury in an opening statement that he wrote the check and presented it to Ralph's store; this he repeated in his final argument, adding that he walked out of the store. Throughout the trial he insisted that he had authority from Burman to sign his name and to use his driver's license as identification. He produced certain witnesses from the county jail who undertook to sustain these claims (which he did not support by his own oath). One of them had been convicted of armed robbery, another of burglary and a third of bookmaking. The jury did not believe them and took no stock in defendant's arguments.

Appellant has asserted at all times that forgery was not proved because the check was never presented to the bank and no one was defrauded because he got no money on it. This argument does not go to the gist of a forgery charge. ▉ That crime is committed when one makes or passes a false instrument with intent to defraud. "The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud. (Pen. Code, § 470.) ▉ Whether the forged instrument is one of a par-

ticular name or character or, if genuine, would create legal liability, is immaterial; the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine." (*People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065].) "In the case of a forgery of an instrument it is not necessary that the forged writing create a valid and legally enforcible obligation in order to constitute the making of it a forgery. It is sufficient that it may possibly deceive another and was prepared with intent to deceive and defraud another. Where the writing alleged to have been forged shows on its face that it might be the means of fraud, no averments of extrinsic facts to show how this could be are necessary." (*People* v. *Brown*, 101 Cal.App.2d 740, 742 [226 P.2d 647].) ▮ Failure to consummate the intended fraud is not of the essence. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 688 [161 P.2d 833].) ▮ Defendant also claims that there was no showing that the check was not good; but the proof that Burman had no account in the bank on which it was drawn sufficiently disposes of that argument, as does the further fact that the check was a forgery.

The evidence is ample to prove without the aid of defendant's admissions above mentioned the fact of the forgery of the check by defendant and its utterance by him.

▮ Defendant claims that he was denied fundamental rights, such as the right to aid of counsel. The record shows that on seven different occasions, beginning with arraignment and continuing throughout the trial, defendant rejected offers of counsel, voicing a desire "to remain in pro. per." Defendant conducted all proceedings of the trial, examining and cross-examining witnesses, making numerous objections, and displaying familiarity with many of the technicalities of a criminal trial. Finally, on May 9th, the time set for sentence and judgment, defendant moved for a continuance of three weeks in order to obtain counsel. This date was almost three months after his initial refusal of such aid. The court adverted to defendant's former refusals of such offers and denied the motion. This ruling is the basis of defendant's claim of denial of due process. There is no semblance of merit in it. The right to counsel had been intelligently, effectively and repeatedly waived and defendant was not entitled to further delay upon the statement that he then desired counsel. (*In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10]); *People* v. *Simon*, 107 Cal.App.2d 105, 118

[236 P.2d 855].) This case exemplifies the observation made by the court in *Monastero* v. *Los Angeles Transit Co.*, 131 Cal.App.2d 156, 162 [280 P.2d 187] : ''Experience in trial of cases indicates that all too often litigants who appear in propria persona deliberately attempt to capitalize upon their own ignorance or appearance of ignorance.''

On a parity with the claim of denial of counsel is the assertion that defendant was denied the right to subpoena witnesses. The record shows that the trial court displayed unlimited patience and was punctilious in according defendant full and free opportunity to subpoena and to present in court all witnesses desired by him.

■ The claim of error in the matter of proof of defendant's prior conviction of felonies is plainly without foundation. Appellant makes two points. First, he says that the prior case was pending on appeal, execution was stayed and, as he had not served any time on that conviction, it was not provable. That this is not the law appears from the ruling in *People* v. *Clapp*, 67 Cal.App.2d 197, 200 [153 P.2d 758].

■ The second contention concerning prior conviction is that there was reversible error in placing the entire file of the former case in evidence. Initially, that file was received by reference and without objection. On a later date during a discussion in chambers the court, on motion of the prosecutor and over defendant's objection, excluded all portions of the file other than the judgment and stay of execution. Immediately after that, in the presence of the jury, defendant moved for a mistrial upon the ground that part of the file had been withdrawn from evidence over his objection. The district attorney then consented to restoration of the entire file to the status of evidence; defendant insisted on it; the judge advised him ''that there are matters in that file that are very detrimental to you.'' Defendant replied : ''That is in regard to the conviction, your Honor. I am not trying to hide anything. There is nothing in there that proves detrimental to me as far as I am concerned. THE COURT: Very well. At the request of the defendant the entire file will go into evidence as his exhibit.'' Unless a defendant appearing in propria persona is entitled to greater rights than one who is represented by counsel, there is no possible basis for claim of error in this matter. *People* v. *Clark*, 122 Cal.App.2d 342, 349 [265 P.2d 43] : ''But by electing to appear *in propria persona* a defendant cannot secure material

advantages denied to other litigants. Certainly one appearing *in propria persona* cannot consent at the trial to the introduction of evidence, after first introducing the subject matter himself, and thus invite the introduction of evidence to rebut the inference he was trying to create, and then be permitted on appeal to complain that his invitation was accepted." *Lombardi* v. *Citizens Nat. Trust & Sav. Bank,* 137 Cal.App.2d 206, 208 [289 P.2d 823] : "A litigant has a right to act as his own attorney (*Gray* v. *Justice's Court,* 18 Cal.App.2d 420 [63 P.2d 1160]) 'but, in so doing, should be restricted to the same rules of evidence and procedure as is required of those qualified to practice law before our courts; otherwise, ignorance is unjustly rewarded.' (*Knapp* v. *Fleming,* 127 Colo. 414 [258 P.2d 489] ; *Monastero* v. *Los Angeles Transit Co.,* 131 Cal.App.2d 156, 160-161 [280 P.2d 187].)  ▮ The Supreme Court of Arizona, in *Ackerman* v. *Southern Arizona Bank & Trust Co.,* 39 Ariz. 484 [7 P.2d 944], stated the principle in this language: 'A layman with resources who insists upon exercising the privilege of representing himself must expect and receive the same treatment as if represented by an attorney—no different, no better, no worse.' To that same effect is *Biggs* v. *Spader,* 411 Ill. 42 [103 N.E.2d 104]."

Attorney Lowell Lyons was called as a witness by defendant in an effort to prove that Burman had entrusted his driver's license to Lyons, who was Burman's attorney, for the purpose of delivering it to defendant for use in raising bail for Burman. Asked if Burman had instructed him to turn over to defendant "identification and authorization to use his name" Lyons declined to answer on the ground that the matter was privileged as between attorney and client. Later, the following occurred: "Q. Did Mr. Burman tell you to deny that you turned over papers to me as his attorney? MR. MAYERSON (Deputy District Attorney) : That question falls within the privilege already claimed by the witness, Your Honor. THE COURT: Objection is sustained."

After the evidence and the arguments were closed and before instructing the jury, the judge decided that he had erred in this last ruling because privilege had been claimed by the state and not by Burman or his attorney. At the beginning of court on the next morning the judge announced that he had erred in this respect and on his own motion told Lyons to resume the witness stand. The question was repeated to Lyons, whereupon the attorney raised the point of privilege and was sustained. Additional questions were

put to Lyons and were answered by him, following which another witness was recalled at the request of defendant and defendant was given time for additional argument; he took advantage of this privilege. ▓ Appellant now says that the attorney could not claim the privilege, that his client must do so in person and therefore there was error in the sustaining of objection as above indicated. Such is not the law. (*Ex parte McDonough,* 170 Cal. 230 [149 P. 566, Ann. Cas. 1916E 327, L.R.A. 1916C 593]; *People* v. *Kor,* 129 Cal. App.2d 436, 440, 447 [277 P.2d 94].)

Defendant says that he suffered prejudice through the fact that the case was reopened after arguments were concluded and thus the matter was unduly emphasized. But the only thing thus brought to the attention of the jury for a second time was the fact that Lyons refused to violate his client's confidence. Defendant's witness who was recalled was the bookmaker who then testified that he saw Lyons give some papers to defendant which looked like a driver's license, and that he heard Burman's name mentioned at the time. There was no prejudice in any of this. Nor was there any impropriety in the judge's reopening the case when he decided that he had made an error which could and should be corrected. ▓ The matter of reopening is always one of discretion for the trial judge. (*People* v. *Berryman,* 6 Cal. 2d 331, 338 [57 P.2d 136].)

▓ Appellant attacks the verdict upon the ground that one juror concealed an existing prejudice when examined on *voir dire.* Hugo DiLillo, after stating that his answers to questions previously put to other jurors would be substantially the same, meaning that he was in no way prejudiced, said that his occupation was that of internal revenue agent, that he was connected with the audit division, auditing income tax and excise tax returns in the Los Angeles office. Then followed this: "THE DEFENDANT: Are you acquainted with any members of the law enforcement agency? THE PROSPECTIVE JUROR: No. THE DEFENDANT: Are you considered to be a secret agent for the Internal Revenue Department? THE PROSPECTIVE JUROR: No. THE DEFENDANT: Would you be considered a peace officer under your occupation? THE PROSPECTIVE JUROR: No. THE DEFENDANT: Would you give more credence to the testimony of a police officer than you would to the testimony of the defendant's witnesses? THE COURT: Solely because he is a police officer. THE DEFENDANT: Yes, for that purpose. THE PROSPECTIVE JUROR:

No. THE DEFENDANT: I pass, your Honor.'' In support of his claim appellant presents a letter from one J. Perry August, who designates himself ''Director, Intelligence Division''; it is written on the letterhead of the Commissioner of Internal Revenue and addressed to the defendant. It deals in conclusions as to the status of an agent of the internal revenue service and in fact does not belie the testimony of the juror. Of course it is not competent evidence. In substance and in form appellant has failed to substantiate this charge, and the trial judge committed no abuse of discretion in rejecting the contention.

Other contentions of appellant are properly disposed of summarily.

■ The claim that defendant and his witnesses were brought into court in handcuffs, irons and chains, is not supported by the record. When this point was made on motion for new trial the judge said: ''In that connection you were not handcuffed or manacled at any time when you came into this courtroom. . . . You never came into this courtroom handcuffed. You came to the foyer of this building handcuffed.'' On the occasion to which the judge referred defendant was complaining that he and three witnesses were brought before the jury chained and manacled and in handcuffs and that remarks were made about it at the time. After discussion of the matter the court volunteered to instruct the jurors that defendant and three of his witnesses were in custody of the sheriff and were brought to the court room in handcuffs and were not to be prejudiced thereby. The judge did then give a careful instruction to the jurors in which he mentioned the fact that defendant and his witnesses ''are not handcuffed when they come in the courtroom,'' and at its conclusion said: ''I make this explanation so that you and each of you will disregard that situation in all respects while deliberating in this case. Is that what you wish me to say, sir? THE DEFENDANT: Yes. Thank you, sir.'' There was no error, prejudicial or otherwise, in these incidents.

The assertion is made that there were proceedings in chambers in the absence of defendant. This relates to the circumstances of reopening the case. The court refuted this claim, stating that he had reopened the case on his own motion when he discovered his error. Later, when hearing an application for correction of the transcript, the judge specifically stated that the prosecution was not present in connection with his

considering the matter of changing his ruling. The record in nowise refutes the judge's statement.

■ A motion for preparation of a daily transcript was made at the beginning of the trial and denied. This is a discretionary matter and no abuse has been shown. (See *People* v. *Chait,* 69 Cal.App.2d 503, 524 [159 P.2d 445] ; *Fraser* v. *Payne,* 3 Cal.2d 630, 632 [45 P.2d 345].)

■ Error in giving and refusing instructions is asserted by appellant, but he makes no effort to explain wherein the error lies. In *People* v. *Chait, supra,* the court said, at page 523 : "It is also suggested that there was some sort of error in the refusal to give two other proposed instructions. But the appellants have not argued the point and have not said what error they have discovered. The reviewing court does not search for error but assumes that the judgment is sound unless error is disclosed by the parties interested. (2 Cal.Jur. 731.) " (See also *People* v. *Gidney,* 10 Cal.2d 138, 142 [73 P.2d 1186] ; *People* v. *Jenkins,* 118 Cal.App. 115, 119-120 [4 P.2d 799].)

■ Denial of defendant's motion to set aside the information under section 995, Penal Code, was proper. The grounds of motion there specified are exclusive (*People* v. *Collins,* 60 Cal.App. 263, 269 [212 P. 701] ; *People* v. *Sacramento Butchers' Protective Assn.,* 12 Cal.App. 471, 477 [107 P. 712]), and the motion at bar was made on grounds other than those prescribed by the statute.

Other points raised by appellant do not merit discussion. None of his claims of error is well taken.

The judgment and the order denying a new trial are affirmed. The order denying motion in arrest of judgment is not appealable (*People* v. *Pierce,* 110 Cal.App.2d 598, 611 [243 P.2d 585]), and the purported appeal therefrom is dismissed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied May 1, 1956.