[Civ. No. 23151. Second Dist., Div. Two. Apr. 7, 1959.]

GEORGE E. BATCHELOR, Appellant, v. GEORGE C. FINN et al., Respondents.

[Civ. No. 23152. Second Dist., Div. Two. Apr. 7, 1959.]

ELIZABETH B. JOHNSON, Appellant, v. CHARLES C. FINN et al., Respondents.

412

A. J. Blackman for Appellants.

Charles C. Finn and George C. Finn, in pro. per., for Respondents.

ASHBURN, J.—Presented together in this court are appeals from orders setting aside the respective judgments in the above entitled actions. One of those judgments awards plaintiff Johnson (assignee of George E. Batchelor) recovery of $17,-671.52 from defendants Finn. The other quiets in plaintiff George E. Batchelor full title to a certain aeroplane designated as a Curtiss C-46, bearing Aircraft Number 42-96563 and Civil Aeronautics Administration registration Number N 111 E. The Johnson judgment was rendered after a hearing upon the date set for trial, of which trial date defendants had due notice; they did not appear at the trial. The Batchelor judgment was rendered pursuant to a motion for judgment on the pleadings. Both actions stem from a contract for the purchase by Batchelor from the Finns of a half interest in the said aeroplane. As the trial judge's ruling in each case was based primarily upon fraud on the court and on the defendants

in procuring the judgment, it is necessary that the background be understood.

Prior to November, 1951, the Finns purchased said plane from Vineland School District, of Kern County. The record before us leaves doubt as to whether the Finns actually had title on November 24, 1951, at which time they sold a one-half interest in the said plane to plaintiff George E. Batchelor upon the terms of a letter agreement bearing that date. He was to pay and did pay to the sellers forthwith the sum of $10,000 "for and in consideration of said ½ interest"; the check representing the $10,000 payment, made by Batchelor's attorney, bore this notation: "Payment per ltr. of 11/24/51 for acct. George E. Batchelor." The letter agreement was addressed to Batchelor and said that title would be recorded with the Civil Aeronautics Administration "showing title to be ½ in you [Batchelor] and ½ in us." This was done. It was further specified "that this sale is contingent upon the following:" a. Consummation of an agreement with Vineland School District to release said C-46 Number 4296563 in exchange for an equivalent C-46 under the terms of an agreement of February, 1951, between Finns and the district. The letter also says: "5. You agree that you will furnish ½ of the purchase price of said equivalent aircraft, mentioned in Paragraph 4a above, which price is to be mutually agreed between us. 6. In event that we fail to acquire title to the above aircraft within 6 months from this date, we promise to pay to your order said $10,000.00 on demand. 7. We shall use the above $10,000.00 towards the purchase of a certain Douglas C-47 school aircraft now located at Roosevelt Field, N. Y., and upon your payment to us of ½ of the price of said aircraft (total price of said aircraft not to exceed $20,500.00), we shall give you an undivided ½ interest by bill of sale in said aircraft." The Finns were unable to acquire the C-47 mentioned in paragraph 7 just quoted, and hence no advance on that account was made by Batchelor.

Difficulties and litigation arose between the school district and the Finns. Charles Finn at the trial denied that he and his brother had given the district a bill of sale reconveying to it the Curtiss C-46, but it later appeared from his testimony that a sealed envelope containing such a bill of sale was delivered by the Finns to the superintendent of the Vineland school, which, according to the witness, was to be held as security for performance of the agreement. It further developed that this instrument was made on October 22, 1951,

and contained a warranty of title. The exact nature of the controversy does not appear but it did involve a claim by the district that the Finns had breached their contract with the district concerning said plane and the district, asserting rights under the bill of sale just mentioned, did claim to be revested with title to the aircraft. Later the district gave notice of sale at public auction and Batchelor bid the plane in for $6,110. The notice of sale called attention of all bidders to the fact that the district would give only a quitclaim title because "claims have been made on said Aircraft by International Airports, Inc.,[1] of Burbank, California, and by George and Charles Finn of 7617 Lexington Avenue, Hollywood, California; and that the School District by this sale does not pass upon or recognize the validity of such claims, and that the School District positively will not guarantee title nor give warranties against encumbrances on said Aircraft." The bill of sale covering this transaction is dated June 19, 1956, transfers all of the district's "right, title and interest" in the plane and further says: "No warranties of title or against encumbrances are given by Seller." Upon receiving this document Batchelor took possession of the plane and endeavored without success to register it in his own name with the Civil Aeronautics Administration. So on September 26, 1956, he brought his quiet title action against the Finns, claiming to be sole owner of the aircraft. After obtaining his judgment quieting title and on the strength of same he succeeded in obtaining the desired registration. The plane was a mere "hulk," for which the Finns had paid only $500, reselling a half interest to Batchelor for $10,000. After obtaining his bill of sale from the district, actual possession of the plane, and registration of same in his own name, Batchelor, so the uncontradicted affidavits aver, spent or incurred over $200,000 in rebuilding and revamping the plane, most of which expense was incurred after the quiet title judgment and in reliance upon it. One of Batchelor's affidavits indicates, though not conclusively, that the Finns saw this work going on and stood by without asserting any claim of ownership.

## JOHNSON v. FINN—No. 23152

Meantime, Elizabeth B. Johnson, as assignee of Batchelor, had brought an action against the Finns for money had and received and for money loaned. It was filed on February 18, 1953, and an answer duly interposed. Count I claimed

---

[1] Batchelor's company.

$10,000 for money had and received; Count II, $1,000 for money loaned. After the cause was at issue an amended complaint was filed on September 16, 1955. It reiterates the claim for money had and received, fixes the date thereof as November 24, 1951, which is the day of the making of the above mentioned contract to purchase from the Finns a half interest in the plane. Count II increases the claim for money lent from $1,000 to $3,000; Counts III and IV seek recovery of the $3,000 upon open book account and account stated. Answer thereto was filed on October 24, 1955. After numerous delays, but pursuant to proper notice of trial, the case came on for trial on December 14, 1956. The defendants did not appear and the matter proceeded to hearing pursuant to section 594, subdivision 1, Code of Civil Procedure.

Mr. Batchelor was the only witness. He testified that Johnson was his assignee for collection only, that the $10,000 was paid to the Finns for the purchase of a C-47 aeroplane which they represented they could purchase for $20,000 and that his $10,000 represented half of that price; that they were unable to buy the plane and spent the money in their own way, repaying none of it to him; that they were to buy that C-47 and he was to own half of it. The judge made an earnest effort to learn all the pertinent facts. "Q. What was that original deal, the whole deal? A. I have told you the whole deal, sir. Q. It was to be how much that you were going to advance? A. I was only supposed to advance $10,-000.00. They thought they could buy the airplane for $10,-000.00. However, they said that in no event would it be over $20,000.00. They tried to buy the airplane, but they could never buy it. It was sold to someone else." The $10,000 check was offered in evidence, bearing the explanation previously quoted herein, but no mention was made of the written agreement of November 24, 1951 (the letter) and it was not produced. The effect of the testimony was an agreement upon the terms just mentioned. Had the writing been disclosed it would have been immediately apparent that the $10,000 was the consideration for the purchase of a half interest in the Curtiss C-46 which the Finns had purchased or arranged to purchase from the Vineland School District. Batchelor was to furnish half the purchase price of the C-47, not exceeding $20,500, and to have a half interest therein. At least that seems to be a correct interpretation of the agreement and the trial judge was entitled to the information so that he could form his own judgment upon the matter. The

trial judge who ruled upon the instant motion said in his memorandum of decision: "This agreement, and other letters of plaintiff's counsel, give full support to the claim of the Finns that such sum of $10,000 was the consideration paid by Batchelor for a one-half interest in plane N-111-E, resulting in the registration of Batchelor as half-owner, with the C.A.A.; and that as to it, no sum was owing to the plaintiff and her assignor." Paragraph 6 of the Batchelor-Finn agreement says: "In event that we fail to acquire title to the above aircraft within 6 months from this date, we promise to pay to your order said $10,000.00 on demand." This plainly relates to the Curtiss C-46. The agreement further provided that that plane be recorded with the Civil Aeronautics Administration showing one-half interest in Batchelor and one-half interest in the Finns and this was done. The contract was executed on Batchelor's behalf by his attorney who, when demanding possession of the C-46 from the school district on October 21, 1955, said in his letter of that date: "On or about May 24, 1952, my client, George Batchelor, purchased an undivided one-half interest in Curtiss C-46A Aircraft N 111 E from Charles C. Finn and George C. Finn." In another letter to an assistant county counsel of Kern County dated November 10, 1955, the same attorney said: "Be that as it may, our concern about N 111 E is the same concern that you would have about $10,000 invested for three or four years without anything coming in. . . . Having gotten rid of it and permitted the Finns to resell a half interest for $10,000 to us, the District wants an appraisal."

The matter was left to the trial judge at the default hearing upon a false basis, due to the express statements of the witness and his suppression of certain facts and a document material to the hearing. That this was a fraud upon the court was held below and the inference is a reasonable one. The circumstances point to a deliberate suppression and it seems that the trial judge would not have rendered the money judgment in question had he known the terms of the written agreement of November 24, 1951.

■ No contention seems to be made that the defendants did not owe the $1,000 item, but the $2,000 which was included in the amended complaint occupies a different category. Mr. Batchelor testified that it had been advanced to defendants on his behalf by his brother and charged to his account; that it had never been repaid to the witness and he could not reach his brother to learn whether it was ever repaid to him;

that he had demanded payment by the Finns of the $2,000 and the $1,000 and they said they did not have it. At the hearing of the motion now under review defendants produced a check for $2,000 dated February 18, 1952, running from Charles C. Finn to Harry Batchelor (George E. Batchelor's brother) and endorsed by Harry and deposited to the credit of his firm, Major Aircoach Systems, Inc. Later in the hearing counsel for Batchelor offered to remit this $2,000 from the judgment and repeated the offer several times. No question remains as to the impropriety of including that $2,000 in the judgment.

█ Returning to the $10,000 item it is elemental law that fraud may and usually must be proved circumstantially. (23 Cal.Jur.2d, § 80, p. 201.) The language of *Parsons* v. *Weis*, 144 Cal. 410, 420 [77 P. 1007], is pertinent: "In the first place, the actual falsity of these averments was clearly shown, and appellant introduced no evidence, and made no effort whatever, to show that he did not know of such falsity."

█ Also, *Gordon* v. *Gordon*, 145 Cal.App.2d 231, 235 [302 P.2d 355]: "When a trial judge in a proper proceeding vacates a judgment he has rendered in ignorance of material facts which he believes a party had a duty to disclose to him, and which, if known to him, would have caused him to refrain from ordering the judgment, we will not question his action." █ The fact that the fraud found to have been worked upon the court was intrinsic rather than extrinsic is immaterial upon a motion to vacate made within six months, as was the case at bar. (*Peterson* v. *Peterson*, 135 Cal.App. 2d 812, 816 [288 P.2d 171]; *Security-First National Bank* v. *Hauer*, 47 Cal.App.2d 302, 306 [117 P.2d 952].)

█ This motion was originally set for a day falling within the six months period prescribed by section 473, Code of Civil Procedure, and the fact that the hearing was continued from time to time until after expiration of that period does not affect its timeliness. (Code Civ. Proc., § 1005.5; *Brownell* v. *Superior Court*, 157 Cal. 703, 710 [109 P. 91]; *Roseborough* v. *Campbell*, 46 Cal.App.2d 257, 261 [115 P.2d 839]; 29 Cal. Jur.2d, § 149, p. 92.) Under section 1005.5, Code of Civil Procedure (enacted in 1953), the filing of the motion is deemed the making of the motion for all purposes (see 29 Cal.Jur.2d, § 149, p. 92; 3 Witkin, California Procedure, p. 2110, § 58; 2 *id.*, pp. 1647-1648, § 10). Hence the motion was timely without regard to application of section 473a.

Appellant's claim that respondents could not be granted any relief because they were in contempt of court with respect to another plane and other litigation concerning it, cannot be sustained in the circumstances here present. Four matters were heard contemporaneously, two of them being the said contempt charges. The rule which withholds relief to one who is in contempt of court is essentially one whose administration lies within the sound discretion of the court (cf. *Borenstein* v. *Borenstein*, 11 Cal.2d 301 [79 P.2d 388]; *Tobin* v. *Casaus*, 128 Cal.App.2d 588, 590 [275 P.2d 792, 49 A.L.R.2d 1419]). In the present instance the alleged contemnors were before the court resisting that charge and the court was engaged in examining into its merits. We perceive no abuse of discretion in the court's proceeding with all four matters contemporaneously and administering appropriate relief in each when the hearing was concluded. The trial judge found George Finn guilty of contempt and ordered him committed to the county jail until he should purge himself. As to Charles Finn it appeared that the District Court of Appeal had issued a writ of habeas corpus returnable at a later date, October 10, 1957; hence both contempt matters were stayed until October 13, 1957, awaiting action of the higher court.

The order vacating the default judgment in the Johnson case must be affirmed.

### BATCHELOR v. FINN—No. 23151

In the quiet title action the Finns were served pursuant to order for publication of summons; personal delivery being made at Alexandria, Virginia, on October 17 and 18, 1956. The Finns in Washington, D.C. prepared an answer and forwarded it to Attorney Winkler in Los Angeles. It was not verified and Winkler told Mr. Blackman, plaintiff's attorney, it would not be filed because not in proper form. Blackman gave him to and including the 20th of November, 1956, to do so. The answer not having been filed, plaintiff's attorney caused defendants' default to be entered early on November 21, 1956. In the afternoon of that day he learned from Winkler that he had obtained an order of court permitting the filing of the answer. It was filed on that same day, the 21st, after the default had been entered. Winkler paid the customary appearance fee on behalf of defendants. When plaintiff's attorney learned of this filing and received a copy of the answer, which was on the 21st, he prepared on the same day a motion for judgment on the pleadings returnable on the

27th. This was served upon defendants, whose answer was signed "in pro. per.," by mailing on the 21st. No further steps were taken upon the theory that default had been entered. The motion for judgment on the pleadings was heard at the appointed time and granted, the defendants not appearing and not being represented. It is said that fraud inhered in this proceeding because no mention was made of the existing entry of default and that this silence misled the court. The judgment entered on November 27 pursuant to the order granting the motion was set aside by an order which is the subject of appeal in Number 23151.

The ruling is based primarily upon the conclusion that there was a fraud upon the court. It was said by the trial judge in his memorandum: "Independently of said Motions, the Court determines that the want of disclosure as to entry of default in connection with said proceeding for Judgment on the Pleadings misled the Court as to its procedure, and was a constructive fraud upon it and on that ground the Court orders said judgment vacated." Entering into this ruling is a procedural concept which we find to be erroneous, one turning upon sections 751 and 585, subdivision 3, Code of Civil Procedure.

The defendants Finn were in default and that fact was made a matter of record early on the morning of November 21, 1956, when plaintiff's counsel caused the clerk to enter said default. Later on that same day counsel was served with an unverified answer signed by the Finns "in pro. per." The attorney to whom the answer had been sent by the Finns had advised plaintiff's attorney that he would not file it because it was not in proper shape. Mr. Blackman told him that he would take the Finns' default, which he did on the following morning. The other attorney changed his mind, got an ex parte order from the presiding judge permitting the filing of the answer and did file it on the 21st.

While an answer filed after an entry of default has no immediate efficacy, it has potential value for plaintiff's attorney may never raise the point and the delay may be waived. In this instance plaintiff's attorney was presented with a dilemma. He could not reasonably expect to obtain from any judge a default judgment so long as the answer was on file, nor could he properly suppress that fact. An appropriate procedure would have been a motion to strike the answer. (*Cf. Cuddahy* v. *Gragg*, 46 Cal.App. 578, 580 [189 P. 721] ; *Buck* v. *Morrossis,* 114 Cal.App.2d 461, 464 [250 P.2d 270].) Equally

available was a motion for judgment on the pleadings. (See *People* v. *Culverwell,* 44 Cal. 620, 622.) Such a motion constitutes a waiver of the default just like any other step which recognizes the pleading as properly on file. (See *Sawtelle* v. *Muncy,* 116 Cal. 435, 439 [48 P. 387] ; *Madison* v. *Octave Oil Co.,* 154 Cal. 768, 770-771 [99 P. 176] ; *Oil Tool Exchange, Inc.* v. *Schuh,* 67 Cal.App.2d 288, 297 [153 P.2d 976] ; *Nicholls* v. *Anders,* 13 Cal.App.2d 440, 444 [56 P.2d 1289] ; 28 Cal.Jur. 2d, § 25, p. 646.) But that motion gave promise of early determination of the action, quite contrary to the result to be expected from a motion to strike or an application to the court for a default judgment. The defendants were and are dilatory and litigious.[2]

The transcript herein shows that there was no evidence given upon the motion for judgment on the pleadings; any other procedure would have been anomalous. But the trial court inferred that this was a strategy adopted in order to avoid proof of exclusive title to the aeroplane being in plaintiff. This was based upon the view that sections 751 and 585, subdivision 3, Code of Civil Procedure, forbid a default judgment in a quiet title action without affirmative proof of plaintiff's title and therefore a motion for judgment on the pleadings would be just a maneuver to avoid such proof; upon this is superimposed speculation that the law and motion judge, if advised of the existing default, would not have granted the motion for judgment without hearing evidence of title. This is a series of misconceptions.

The instant action is an ordinary quiet title brought against two individuals, the Finns, and some fictitious defendants. It falls within the purview of section 738, Code of Civil Procedure, which in varying forms has been in the code since 1872. *Los Angeles* v. *Los Angeles F. & M. Co.,* 150 Cal. 647, 649 [89 P. 615], expressly holds that taking of evidence is not essential to a default judgment in such a quiet title action, saying in part: ''It is claimed that the judgment is void because the record does not show that the court heard or required evidence in proof of the plaintiff's case. This was not

---

[2]Prior to February 9, 1959, respondents in each of these cases had been served with a notice prescribed by rule 17b with respect to default in filing a respondents' brief; the 30 days had expired; No. 23151 was then pending in this Division and No. 23152 in Division Three of this court; on said February 9th a long telegram was sent to the Presiding Justice of each of said Divisions seeking a further extension of time for filing respondents' brief; the application was denied by each Division and the cause ordered upon the next calendar; thereupon respondents served and filed in each case a respondents' brief *on the following day,* February 10th.

necessary on default in an ordinary action, where the summons is personally served, except where the taking of an account, or the proof of damages or of some other fact, is necessary to enable the court to give judgment or carry it into effect. (Code Civ. Proc., § 585.) Here no such proof was required. The default of the defendant in an ordinary action of this character admits, so far as such defaulting defendant is concerned, the absolute verity of all the allegations of the complaint. No amount of evidence could establish the facts more effectually for the purpose of rendering the judgment, as against such defendant." (See also *Hamblin* v. *Superior Court*, 195 Cal. 364, 370 [233 P. 337, 43 A.L.R. 1509].) In *Strong* v. *Shatto*, 201 Cal. 555, 558 [258 P. 71], a quiet title action, it is said: "[T]he default of said defendants who, being duly served, did not appear and answer, constituted an admission of every material fact essential to such judgment." It was also shown in the Los Angeles case, *supra*, that sections 749-751, Code of Civil Procedure, were not applicable to that case because "[t]here are no allegations of actual, exclusive, and adverse possession by plaintiff continuously for twenty years, nor any of the special averments required in an action under section 749. The action was begun on April 25, 1903, which was after the act of March 8, 1903, amending sections 749, 750, and 751, took effect, and therefore the question whether or not it is a proceeding under those sections is to be determined by the terms of the sections as then amended. We have no doubt it was an ordinary action, and not a proceeding as in those sections authorized." (Pp. 648-649.)

■ Attempted differentiation of this case upon the ground that section 750 "has been amended since to embrace actions under C.C.P. 738 and C.C.P. 751 now refers to all cases of service of summons as provided in § 750, which includes actions under C.C.P. 738" cannot succeed. It was correctly held in *Alameda County Title Ins. Co.* v. *United States F. & G. Co.*, 121 Cal.App. 73, 76 [8 P.2d 912], that sections 749 and 750 Code of Civil Procedure are not applicable to an action brought under 738.

Section 749 covers actions brought by a plaintiff who stands upon adverse possession for 20 years and seeks to quiet title to real property only. Such an action may include "all other persons unknown" who make claims to the property. It may be joined with one brought under section 738 but as to any known claimant "the proceedings in the action shall be governed by the provisions of said Section 738 and said sections

pertinent thereto; and the provisions of Section 750 of this code shall not apply to the proceedings as to any such defendant." Section 749.1 (passed in 1949) relates to actions by persons who stand upon adverse possession for 10 years, which actions may include unknown claimants. The action may be joined with one under section 738 but it is confined to real property and, as in the case of section 749, the action "shall be deemed and considered brought under the provisions of Section 738 and sections pertinent thereto of this code, and as to any such defendant the proceedings in the action shall be governed by the provisions of said Section 738 and said sections pertinent thereto; and the provisions of Section 750 of this code shall not apply to the proceedings as to any such defendant."

Section 751 (amended in 1943; the Los Angeles case, *supra,* was decided in 1907) refers to actions brought under section 749 (this through its reference to section 750, the "preceding section," which in turn rests on 749) and provides *inter alia* that the court "shall have jurisdiction to examine into and determine the legality of plaintiff's title and of the title and claim of all the defendants and of all unknown persons, and to that end must not enter any judgment by default, but must in all cases require evidence of plaintiff's title and possession, and hear such evidence as may be offered respecting the claims and title of any of the defendants and must thereafter direct judgment to be entered in accordance with the evidence and the law. . . . The remedy provided in this and the two preceding sections shall be construed as cumulative and not exclusive of any other remedy, form or right of action or proceeding allowed by law." Inasmuch as section 749 specifically provides that the proceedings as to known defendants shall be governed by the provisions of section 738 and relevant sections, and section 751 says its procedure shall be cumulative only, it follows that its requirement of evidence of title does not apply to an action brought under 738, hence not to the one at bar. Let it be emphasized that section 749 and section 749.1 cover only actions involving title to real property and that section 750 and section 751 are intended merely as implementation of those sections, 749 and 749.1.

Reliance upon section 585, subdivision 3, Code of Civil Procedure, is equally unavailing. This subdivision relates to actions in which service of summons was made by publication. The right to a default judgment is expressly limited to motions made before the filing of any answer, demurrer or motion to strike: "In all actions where the service

of the summons was by publication the plaintiff, upon the expiration of the time for answering, may, upon proof of the publication, and that no answer or demurrer has been filed, apply for judgment; and the court must thereupon require proof to be made of the allegations of the complaint; . . .'' The same limitation is found in that part of the subdivision relating to quiet title actions.

In the present instance defendants' answer was served and filed before plaintiff's attorney applied for a default judgment; in fact it forestalled any such application. The filing of an answer is a general appearance (Code Civ. Proc., § 1014). At the time of its filing an appearance fee was paid. The appearance was "in pro. per." and the answer had been prepared by the Finns and sent to the attorney who filed it. Personal service had been made upon them at Alexandria, Virginia; one was served on October 17, 1956, and the other on the following day. The default was entered and their answer filed on November 21, 1956, over a month after service; also after the time to plead had expired. This unverified pleading was so evasive as to admit all the material allegations of the complaint. We conclude, upon the authority of certain cases cited by appellant, that this personal knowledge of the action coupled with their general appearance removed the respondents from the class of persons to whom subdivision 3 of section 585 applies, brought them within the rationale of *Los Angeles* v. *Los Angeles F. & M. Co., supra,* 150 Cal. 647, 649, and dispensed with the taking of evidence before entry of default judgment. *A fortiori* it precludes any valid objection to a motion for judgment on the pleadings.

Appellant relies in this behalf upon *Zobel* v. *Zobel,* 151 Cal. 98 [90 P. 191]. In that case, an action to quiet title, defendant was personally served outside the state after order made for publication of summons. Defendant filed a demurrer and answer but did not serve them upon plaintiff's attorney; upon his motion they were stricken, default entered and default decree granted. Thereafter defendant moved to vacate the judgment upon the ground that summons had not been personally served upon him. The order was granted, but the Supreme Court reversed. Referring to that portion of section 473, Code of Civil Procedure, which is now section 473a, the court said, at page 100: "The obvious and sole purpose of this particular provision of section 473 is to afford one, who has only constructive notice of a suit brought against him, an opportunity within the time designated, to invoke the

benefit of the section and defend upon the merits. Where, however, at any time prior to the judgment, the defendant personally appears in the action, this, of course, establishes his personal knowledge of its pendency, and so removes him from the class to which the section affords relief. . . . He based his application solely on want of personal service, and the validity of the order is to be determined by considering whether the evidence sustained that claim. We are satisfied that it did not, because it appears from the record that the defendant, notwithstanding he was originally served outside of the state, personally appeared in the action prior to the rendition of judgment, and hence was not entitled to have the judgment set aside under the provisions of the section upon which his application was based.'' It was held that defendant had made a general appearance concerning which the court remarked that ''such appearance was equivalent to personal service.'' Code of Civil Procedure, section 416, says: ''. . . The voluntary appearance of a defendant is equivalent to personal service of the summons and copy of the complaint upon him.''

While the instant case involves the necessity of taking evidence pursuant to section 585, subdivision 3, upon the theory that defendants were served by publication, and the Zobel case considered the language of present section 473a relating to time for appearance by one who has been served by publication, we see no difference in principle between the two situations.

*Palmer* v. *Lantz*, 215 Cal. 320, 324 [9 P.2d 821] : ''Service by publication and mailing a copy of the complaint and summons is not personal service [citation], however, and by reason of this fact appellant contends that under section 473 of the Code of Civil Procedure he is entitled to be relieved from the default as a matter of right without further showing than that he was not personally served. . . . But the provision is not designed to afford relief from a judgment which may be validly entered upon constructive service to those who with full knowledge of such service upon them, by reason of receipt of a copy of the summons and complaint through the mail, remain inactive. [Citations.]''

Concerning section 473a, the Supreme Court said, in *Solot* v. *Linch*, 46 Cal.2d 99, 105 [292 P.2d 887] : ''Relief from default under section 473a of the Code of Civil Procedure is predicated upon the assumption that personal jurisdiction of the defendant has not been obtained. (*Gardner* v. *Gardner,*

72 Cal.App.2d 270, 272 [164 P.2d 500].) Its purpose is clearly to give relief to a defendant who has had only constructive, rather than actual, notice of the action against him.''

To the same effect, see *Estate of Walden,* 168 Cal. 759, 761 [145 P. 100]; *Boland* v. *All Persons,* 160 Cal. 486, 490 [117 P. 547]; *Pierson* v. *Fischer,* 131 Cal.App.2d 208, 212 [280 P.2d 491].

We hold that respondents' general appearance before default judgment was entered brought them within the rationale of the Zobel case, dispensed with the necessity of taking evidence, and removed them from the class for whose benefit that portion of section 585, subdivision 3, was enacted. There was therefore no necessity of taking evidence in this case either upon application for a default judgment or upon motion for judgment on the pleadings.

As a matter of law there was no fraud inherent in the motion for judgment on the pleadings. Nor was there error in granting the same, for the answer raised no material issue. Of course mere error in that ruling would not be ground for vacating the order or ensuing judgment and we do not pause to discuss further the merits of the ruling.

 One of the grounds of the ruling below was failure of plaintiff to give statutorily prescribed notice of his motion for judgment on the pleadings, ten days. Defendants' answer was served by mail. It bears the endorsement: "George C. Finn Charles C. Finn 7617 Lexington Ave. Hollywood, California Phone: Ho. 9 3746 In Pro. Per.'' It is signed by each defendant ''In Pro. Per.'' Regardless of residence or domicile the place for service of notice upon defendants by mail was the address endorsed on the pleading (Code Civ. Proc., § 1013). That type of service was permissible because defendants had no attorney of record (Code Civ. Proc., §§ 1012, 1015). It may be assumed that defendants came within the 10-day notice provision of section 1005. In the present instance six days notice was given by mail.

Although it may be assumed that such a notice was insufficient, defendants proceeded in such manner as to preclude their taking advantage of the fact.[3]

---

[3]The record shows that these defendants frequently had been advised by trial judges that they are bound by the same procedural rules when acting in propria persona as is any member of the bar. Of course that is the law. (See *Monastero* v. *Los Angeles Transit Co.,* 131 Cal.App.2d 156, 160 [280 P.2d 187]; *Lombardi* v. *Citizens Nat. Trust etc. Bank,* 137

The notice of motion to vacate the judgment, filed May 27, 1957, stated that same would be made ''on the grounds of mistake, inadvertence, surprise and excusable neglect, and on the grounds that the judgment is void.'' The supplemental notice filed on June 17, 1957, specified ''the grounds that the judgment is void and fraud.'' While the motion attached to the last mentioned notice contains the language that ''defendants were not notified or given an opportunity to be heard within the meaning and intent of the requirement of 'due process of law,' '' nevertheless the insufficiency of the six-day mailed notice was not mentioned in presentation of the argument below. On the contrary defendants orally relied upon fraud, mistake, inadvertence, surprise, excusable neglect and the claim that the judgment is void.

The ''doctrine of 'special appearance' applies by analogy to motion procedure.'' (2 Witkin, California Procedure, p. 1642, § 4(c); and see 1 Witkin, California Procedure, p. 347, § 78.) *Lacey* v. *Bertone,* 33 Cal.2d 649 [203 P.2d 755], establishes this to be the law of California. That was a specific performance action wherein defendant obtained a preliminary injunction after trial and during submission of the cause. Plaintiff moved to dissolve the injunction because the order to show cause was not served five days before the hearing as required by section 1005, Code of Civil Procedure; but the notice of motion also specified that there was no sufficient ground for the injunction, that the extent of same was too great, and no written undertaking had been given as required by section 529, Code of Civil Procedure. The motion was denied. Upon appeal from the order granting the injunction and the order denying his motion to dissolve it, plaintiff Lacey contended ''that the order granting the injunction should be reversed for failure to give proper notice of the hearing because the only notice was that served on him four days before the hearing, and that the order denying his motion to dissolve the injunction should be reversed for the same reason.'' (P. 651.) The court said: ''We are of the opinion, however, that he is in no position to raise these objections

Cal.App.2d 206, 208 [289 P.2d 823]; *People* v. *Morgan,* 140 Cal.App.2d 796, 801, 802 [296 P.2d 75]; *Doran* v. *Dreyer,* 143 Cal.App.2d 289, 290 [299 P.2d 661]; *People* v. *Mattson,* 51 Cal.2d 777, 793-794 [336 P.2d 937].) In *People* v. *Morgan, supra,* at page 802, the court says: ''This case exemplifies the observation made by the court in *Monastero* v. *Los Angeles Transit Co.,* 131 Cal.App.2d 156, 162 [280 P.2d 187]: 'Experience in trial of cases indicates that all too often litigants who appear in propria persona deliberately attempt to capitalize upon their own ignorance or appearance of ignorance.''

and that he waived the lack of proper notice by making a general appearance on the motion to dissolve the injunction.

██ "It is well settled that personal service of process may be waived and that where a person voluntarily appears generally he will be held to have waived the objection even though there was no service upon him. [Citations.] If he requests any relief that can be given only on the hypothesis that he is properly before the court, he thereby submits to the jurisdiction of the court and must necessarily be held to have waived the irregularity of his summons. ██ This rule is ordinarily applied when the defect consists in a failure to serve summons or give the notice required to bring the party before the court originally. [Citations.] It likewise applies when there is a failure to give proper notice of subsequent proceedings to a party who has appeared in the action. [Citations.]

"In the present case, if Lacey wished to make a special appearance, he should have relied solely on the lack of proper notice as specified in the first ground of his motion. Instead, he also asked for other relief which could properly be given only if the court had jurisdiction of his person, namely, that there was no sufficient ground for the injunction and that it was too broad in scope." (Pp. 651-652.) Also: "On Lacey's motion to dissolve or modify the injunction he had ample opportunity to litigate the merits of the matter and, having made a general appearance, cannot now be heard to complain of defects in the service of the order to show cause." (P. 652.)

Among the cases cited in support of the Lacey rule is *Goble* v. *Appellate Dept. of Superior Court*, 130 Cal.App. 737, 739 [20 P.2d 345], wherein the basis for the rule is thus stated: "In other words, to translate this language into terms of the present proceeding, while petitioner had no notice preceding the order staying *remittitur*, he had his day in court under the motion to vacate it. It is for this reason that he was not prejudiced by the lack of notice. The only purpose of the notice, if one were in fact required, would have been to furnish him an opportunity to be heard. That opportunity he has had."

The Lacey case was followed by this court in *Otsuka* v. *Balangue*, 92 Cal.App.2d 788, 792 [208 P.2d 65]. It is there said: "Furthermore, if there had ever been any validity in plaintiffs' contention that the proof of service is insufficient by reason of the use of the term 'mail' instead of 'postoffice,' the objection has been waived. Plaintiffs did not appear specially to object to the service or the proof of service but made a general appearance and resisted the motion. . . . Since

it does not appear that plaintiffs resisted the motions on the ground that proof of service was defective they waived the right to contest the jurisdiction of the court to hear the motion. (*Lacey* v. *Bertone,* 33 Cal.2d 649, 652 [203 P.2d 755, 757] and cases cited.) In that case the statutory service of an order to show cause why an injunction should not issue was not made, but it was held that the party enjoined waived the lack of proper and timely service by making a general appearance."

In the instant case defendants' insistence upon fraud, mistake, inadvertence, surprise, excusable neglect and the claim that the judgment is void, amounted to the seeking of relief which is available only to one who has made a general appearance. They had their hearing upon those matters of substance and cannot be prejudiced by the faulty six-day notice.

The court ruled against defendants with respect to grounds asserted under section 473, Code of Civil Procedure, and we think it properly did so upon the record made before it.

Our foregoing rulings upon the questions of fraud and inadequacy of notice of motion to vacate necessitate reversal of the order now on appeal and render unnecessary any discussion of appellant's claim that respondents did not move within a reasonable time, were otherwise guilty of laches requiring a denial of their motion, or the claim that defendants were not entitled to be heard because they were in contempt of court with respect to another action concerning a different plane. Likewise unnecessary is discussion of appellant's claim that section 473, Code of Civil Procedure, and not section 473a, Code of Civil Procedure, governs this matter because defendants were personally served outside the jurisdiction pursuant to an order for publication of summons.

There was no showing of any grounds warranting the vacation of the *default* in this case.

The first full paragraph of respondents' brief in Number 23151, beginning at line 21, page 1, and ending at line 7 of page 2 thereof, makes derogatory remarks and veiled charges against one of the superior court judges concerning a matter not before this court. The paragraph on page 6 of said brief which is captioned "Judicial Notice" and begins at line 11 and ends at line 19 of said page makes certain assertions concerning difficulties of appellant with the federal government, which have no place in this proceeding. The same statements appear in respondents' brief in Number 23152, namely, at page 1, line 19 to page 2, line 5, and at page 6, lines 11 to 19 inclusive. Such matters will be stricken.

The order under appeal in *Batchelor* v. *Finn, No. 23151,* is reversed. The above mentioned portions of respondents' brief in said cause are stricken from the record.

The order under appeal in *Johnson* v. *Finn, No. 23152,* is affirmed. The above mentioned portions of respondents' brief in said cause are stricken from the record.

Fox, P. J., concurred.

Mr. Justice Herndon does not participate herein.

Respondents' petition for a rehearing in No. 23151 and appellant's petition for a rehearing in No. 23152 were denied May 5, 1959, and the opinion was modified to read as printed above. Respondents' petition in No. 23151 and appellant's petition in No. 23152 for a hearing by the Supreme Court were denied June 3, 1959. Traynor, J., and Schauer, J., were of the opinion that the petitions should be granted.

On June 19, 1959, the following opinion was rendered in No. 23151:

THE COURT.—It appearing that plaintiff's notice of appeal herein describes two minute orders from which he appeals, viz., (1) order of September 24, 1957, which vacates the judgment etc. and (2) order of October 21, 1957, which grants plaintiff's motion to reconsider said order of September 24, 1957, "and now affirms the order of September 24, 1957, vacating said default and default judgment." It further appearing that the opinion filed herein on April 7, 1959, reversed said order of September 24, 1957, and technically left the appeal from order of October 21, 1957, still pending, and it further appearing that said last mentioned order is not appealable, now, therefore, it is ordered that the attempted appeal from the order of October 21, 1957, is dismissed.

Herndon, J., did not participate therein.

A petition for a rehearing in No. 23151 was denied July 15, 1959. Herndon, J., did not participate therein. On August 17, 1959, respondents' petition for a hearing in No. 23151 by the Supreme Court was denied.